UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| DORIS M.,[1] | ) | |
| | ) | |
| *Plaintiff,* | ) | |
| | ) | |
| *v.* | ) | No. 1:20-cv-02561-RLY-MG |
| | ) | |
| KILOLO KIJAKAZI, Acting Commissioner of the | ) | |
| Social Security Administration, | ) | |
| | ) | |
| *Defendant.* | ) | |

## REPORT AND RECOMMENDATION

In February 2018, Plaintiff Doris M. applied for disability insurance benefits ("DIB") and

supplemental social income benefits ("SSI") from the Social Security Administration ("SSA"),

alleging a disability onset date of July 1, 2017.  [Filing No. 13-2 at 16.]  Her applications were

initially denied on May 2, 2018, [Filing No. 13-4 at 4-7; Filing No. 13-4 at 8-11], and upon

reconsideration on September 28, 2018, [Filing No. 13-4 at 14-16; Filing No. 13-4 at 17-19].

Administrative Law Judge Elias Xenos (the "ALJ") conducted a video hearing on July 23, 2019.

[Filing No. 13-2 at 33-61.]   The ALJ issued a decision on December 2, 2019, concluding that

Doris M. was not entitled to receive benefits.  [Filing No. 13-2 at 16-31.]  The Appeals Council

denied review on August 4, 2020.  [Filing No. 13-2 at 2-6.]  On October 2, 2020, Doris M. filed

---

[1] To protect the privacy interests of claimants for Social Security benefits, consistent with the recommendation of the Court Administration and Case Management Committee of the Administrative Office of the United States courts, the Southern District of Indiana has opted to use only the first name and last initial of non-governmental parties in its Social Security judicial review opinions.

this civil action asking the Court to review the denial of benefits according to 42 U.S.C. § 405(g).

[Filing No. 1.]

The Court referred this matter to the undersigned Magistrate Judge for a report and

recommendation pursuant to 28 U.S.C. § 636(b)(1)(B) and Fed. R. Civ. P. 72(b).  [Filing No. 18.]

For the following reasons, the undersigned recommends that the Court remand the decision of the

ALJ for further proceedings.

## I.
### STANDARD OF REVIEW[2]

"The [SSA] provides benefits to individuals who cannot obtain work because of a physical

or mental disability." *Biestek v. Berryhill*, __U.S.__, 139 S. Ct. 1148, 1151 (2019).  Disability is

the inability "to engage in any substantial gainful activity by reason of any medically determinable

physical or mental impairment which can be expected to result in death or which has lasted or can

be expected to last for a continuous period of not less than twelve months." *Stephens v. Berryhill*,

888 F.3d 323, 327 (7th Cir. 2018) (citing 42 U.S.C. § 423(d)(1)(A)).

When an applicant appeals an adverse benefits decision, the Court's role is limited to

ensuring that the ALJ applied the correct legal standards and that substantial evidence exists for

the ALJ's decision.  *Id.*  For purposes of judicial review, "substantial evidence" is such relevant

"evidence that 'a reasonable mind might accept as adequate to support a conclusion.'"  *Zoch v.*

*Saul*, 981 F.3d 597, 601 (7th Cir. 2020) (quoting *Biestek*, 139 S. Ct. at 1154).  "Although this Court

reviews the record as a whole, it cannot substitute its own judgment for that of the SSA by

reevaluating the facts, or reweighing the evidence to decide whether a claimant is in fact disabled."

*Stephens*, 888 F.3d at 327.  Reviewing courts also "do not decide questions of credibility, deferring

---

[2] The regulations governing disability determinations for DIB under Title II and SSI under Title XVI are identical in virtually all relevant respects unless otherwise noted.

instead to the ALJ's conclusions unless 'patently wrong.'" *Zoch*, 981 F.3d at 601 (quoting *Summers v. Berryhill*, 864 F.3d 523, 528 (7th Cir. 2017)). The Court does "determine whether the ALJ built an 'accurate and logical bridge' between the evidence and the conclusion." *Peeters v. Saul*, 975 F.3d 639, 641 (7th Cir. 2020) (quoting *Beardsley v. Colvin*, 758 F.3d 834, 837 (7th Cir. 2014)).

The SSA applies a five-step evaluation to determine whether the claimant is disabled. *Stephens*, 888 F.3d at 327 (citing 20 C.F.R. § 404.1520(a)(4); 20 C.F.R. § 416.920(a)(4)). The ALJ must evaluate the following, in sequence:

> (1) whether the claimant is currently [un]employed; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment meets or equals one of the impairments listed by the [Commissioner]; (4) whether the claimant can perform her past work; and (5) whether the claimant is capable of performing work in the national economy.

*Clifford v. Apfel*, 227 F.3d 863, 868 (7th Cir. 2000), *as amended* (Dec. 13, 2000) (citations omitted). "If a claimant satisfies steps one, two, and three, she will automatically be found disabled. If a claimant satisfies steps one and two, but not three, then she must satisfy step four. Once step four is satisfied, the burden shifts to the SSA to establish that the claimant is capable of performing work in the national economy." *Knight v. Chater*, 55 F.3d 309, 313 (7th Cir. 1995).

After step three, but before step four, the ALJ must determine a claimant's residual functional capacity ("RFC") by evaluating "all limitations that arise from medically determinable impairments, even those that are not severe." *Villano v. Astrue*, 556 F.3d 558, 563 (7th Cir. 2009). In doing so, the ALJ "may not dismiss a line of evidence contrary to the ruling." *Id.* The ALJ uses the RFC at step four to determine whether the claimant can perform her own past relevant work and if not, at step five to determine whether the claimant can perform other work. *See* 20 C.F.R. § 404.1520(a)(4)(iv), (v). The burden of proof is on the claimant for steps one through four; only at step five does the burden shift to the Commissioner. *See Clifford*, 227 F.3d at 868.

If the ALJ committed no legal error and substantial evidence exists to support the ALJ's

decision, the Court must affirm the denial of benefits. *Stephens*, 888 F.3d at 327. When an ALJ's

decision does not apply the correct legal standard, a remand for further proceedings is usually the

appropriate remedy. *Karr v. Saul*, 989 F.3d 508, 513 (7th Cir. 2021). Typically, a remand is also

appropriate when the decision is not supported by substantial evidence. *Briscoe ex rel. Taylor v.*

*Barnhart*, 425 F.3d 345, 355 (7th Cir. 2005). "An award of benefits is appropriate only where all

factual issues have been resolved and the 'record can yield but one supportable conclusion.'" *Id.*

(quoting *Campbell v. Shalala*, 988 F.2d 741, 744 (7th Cir. 1993)).

## II.
### BACKGROUND

Doris M. was 44 years old on the date of her alleged onset of disability. [Filing No. 13-2

at 24.] She has a high-school education, two years of college, and a certified nursing assistant

certificate. [Filing No. 13-2 at 24; Filing No. 13-6 at 7.] She previously worked as a nursing

assistant and a warehouse stock laborer. [Filing No. 13-2 at 24.] Doris M.'s original application

alleges that she can no longer work because of depression, insomnia, and arthritis. [3] [Filing No.

13-6 at 6.]

The ALJ followed the five-step sequential evaluation set forth in 20 C.F.R.

§ 404.1520(a)(4) and concluded that Doris M. was not disabled. [Filing No. 11-2 at 28.]

Specifically, the ALJ found as follows:

- At Step One, Doris M. had not engaged in substantial gainful activity[4] during the
  period at issue. [Filing No. 11-2 at 19.]

---

[3] The relevant evidence of record is amply set forth in the parties' briefs and need not be repeated here. Specific facts relevant to the Court's disposition of this case are discussed below.

[4] Substantial gainful activity is defined as work activity that is both substantial (*i.e.*, involves significant physical or mental activities) and gainful (*i.e.*, work that is usually done for pay or profit, whether or not a profit is realized). 20 C.F.R. § 404.1572(a).

- At Step Two, Doris M. "has the following severe impairments: Arthralgia[;] Rupture of ligament[,] right knee; Spondylotic changes in the cervical spine; Lumbago with sciatica, left side; Osteoarthritis of left hand; Tendinitis of left rotator cuff; Headaches; and Adjustment disorder with mixed anxiety and depressed mood" and had a noted "[h]istory of alcohol and cocaine abuse and Astigmatism." [Filing No. 13-2 at 19.]

- At Step Three, Doris M. did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments. [Filing No. 13-2 at 19.] As to the "paragraph B" criteria for Listings 12.04 and 12.06, the ALJ found that Doris M. had "marked" limitations in the area of concentrating, persisting or maintaining pace. [Filing No. 13-2 at 20.] The ALJ further found "moderate" limitations in three areas: understanding, remembering, or applying information; interacting with others; and adapting or managing oneself. [Filing No. 13-2 at 20.]

- After Step Three but before Step Four, Doris M. had the RFC "to perform light work as defined in CFR 404.1567(b) and 416.967(b) except Occasionally climbing ramps and stairs; Never climbing ladders, ropes, or scaffolds; Occasionally balancing, stooping, and crouching; Never crawling or kneeling; Frequently handling and fingering with the left upper extremity; Frequently reaching in all directions with the left extremity except never overhead; Occasionally pushing and pulling with the left upper extremity; May never work around unprotected heights or hazardous machinery; Due to a combination of severe mental deficits, work limited to simple, routine tasks; In a work environment free of fast-paced production requirements; Involving only simple, work-related decisions; With few, if any, work-place changes; Only occasional interaction with the general public, co-workers, and supervisors." [Filing No. 13-2 at 21.]

- At Step Four, relying on the testimony of the vocational expert ("VE") and considering Doris M.'s RFC, she was unable to perform her past work as a nursing assistant or stock laborer. [Filing No. 13-2 at 24.]

- At Step Five, relying on the VE's testimony and considering Doris M.'s age, education, work experience, and RFC, there were jobs that existed in significant numbers in the national economy that she could perform, such as a cleaner, order clerk, and a priming-mixture carrier. [Filing No. 13-2 at 24-25.]

### III.
#### DISCUSSION

Doris M. argues that the ALJ erred: (1) by not adequately accounting for her mental

limitations in the RFC; (2) by failing to adequately account for the limitations posed by her

headaches in the RFC; and (3) by improperly discrediting her testimony about her subjective symptoms under SSR[5] 16-3p.  The undersigned will consider each of the arguments in turn.

**A.    The RFC's Mental Limitations**

Doris M. first argues that although the ALJ found that she had a marked limitation in the area of concentration, persistence, and pace ("CPP") in the listing analysis at Step Two, [Filing No. 13-2 at 20], the ALJ failed to adequately account for the marked CPP limitation in the RFC and VE testimony.  [Filing No. 20 at 14.]  She contends that a marked CPP limitation is inconsistent with an RFC limiting her to "simple, routine tasks" in an environment "free of fast-paced production requirements" involving "only simple-work-related decisions" with "few, if any work place changes" and "only occasional interaction" with others.  [Filing No. 20 at 14.]  She likewise argues that the ALJ's finding of moderate limitations in the three categories of interacting and relating to others; understanding, remembering, and applying information; and adapting and managing oneself are not adequately accounted for in the RFC or VE testimony.  [Filing No. 20 at 14.]  She cites medical records documenting her abnormal behaviors during visits with clinicians, [Filing No. 20 at 15-16], and argues that the ALJ's decision "fails to mention the fact that almost all the providers who evaluate or treat [Doris M.], even for non-mental health conditions, consistently comment on her bizarre and abnormal behaviors," and instead, she says, the ALJ "cherry-picked" evidence.  [Filing No. 20 at 15-17.]  She contends this evidence shows that she is unable to complete simple, routine tasks as contemplated by the RFC.  [Filing No. 20 at 16.]  She likewise argues that the hypothetical posed to the VE did not fully encapsulate all her CPP limitations.  [Filing No. 20 at 19-22.]

---

[5] Social Security Rulings ("SSR") are interpretive rules intended to offer guidance to ALJs and are "binding on all components of the Social Security Administration."  20 C.F.R. § 402.35(b)(1); *Laurer v. Apfel*, 169 F.3d 489, 492 (7th Cir. 1999).

In response, the Commissioner points out that the RFC adopted by the ALJ was "more restrictive than any medical opinion in the record." [Filing No. 22 at 1-2.] The Commissioner cites Seventh Circuit caselaw for the proposition that there cannot be a reversible error when the record lacks evidence supporting a finding for an RFC more restrictive than that adopted by the ALJ. [Filing No. 22 at 10 (citing *Dudley v. Berryhill*, 773 F. App'x 838, 843 (7th Cir. 2019)).] The Commissioner further notes that the clinicians evaluating Doris M.'s mental functioning specifically considered the evidence in the record regarding Doris M.'s abnormal behaviors during medial appointments. [Filing No. 22 at 11.] Thus, the Commissioner argues, "[t]he medical experts already considered all of the symptoms [Doris M.] claims should have been considered," and found her mental functioning to be even higher than the RFC ultimately adopted by the ALJ. [Filing No. 22 at 11.] Furthermore, the Commissioner contends that Doris M.'s argument fails because she is relying on the ALJ's listing assessment at Step Two rather than the RFC finding prior to Step Four. [Filing No. 22 at 12.] This matters because, the Commissioner argues, "all that is required is that the ALJ *consider* [Doris M.'s] mental limitations in fashioning the RFC—not that the ALJ include them." [Filing No. 22 at 12 (citing 20 C.F.R. § 404.1545(a)(2)).] The Commissioner contends that the RFC sufficiently accounted for Doris M.'s marked CPP limitations. [Filing No. 22 at 15.]

Doris M. did not file a reply brief in support of her appeal.

CPP "refers to the abilities to focus attention on work activities and stay on task at a sustained rate." 20 C.F.R. Pt. 404, Supt. P, App. 1 § 12.00E(3). "[B]oth the hypothetical posed to the VE and the ALJ's RFC assessment must incorporate all of the claimant's limitations supported by the medical record." *Yurt v. Colvin*, 758 F.3d 850, 856 (7th Cir. 2014). The RFC is based upon medical evidence as well as other evidence, such as testimony by the claimant or her friends and

family.  *Craft v. Astrue*, 539 F.3d 668, 676 (7th Cir. 2008).  "[W]hen an ALJ finds there are documented limitations of [CPP], the hypothetical question presented to the VE must account for these limitations."  *Winsted v. Berryhill*, 923 F.3d 472, 476 (7th Cir. 2019).

Generally, employing terms like "simple, repetitive tasks" on their own will not necessarily properly account for problems captured by CPP.  *Crump v. Saul*, 932 F.3d 567, 570 (7th Cir. 2019). This is because "observing that a person can perform simple and repetitive tasks says nothing about whether the individual can do so on a sustained basis, including, for example, over the course of a standard eight-hour work shift."  *Id.*  Thus, the RFC and hypotheticals "must account for both the complexity of the task and the claimant's ability to stick with a task over a sustained period." *Warren v. Colvin*, 565 F. App'x 540, 544 (7th Cir. 2014).  *See also Varga v. Colvin*, 794 F.3d 809, 814-15 (7th Cir. 2015) (holding that further limitation of "free of fast paced production requirements, including only simple work related decisions with few if any work place changes and no more than occasional interaction with coworkers or supervisor" was insufficient to capture claimant's CPP limitations).

Here, in the Step Three analysis, the ALJ found that Doris M. had marked limitations in CPP.  [Filing No. 13-2 at 20.]  The ALJ's subsequent RFC limited Doris M. to "simple, routine tasks [i]n a work environment free of fast-paced production requirements[,] [i]nvolving only simple, work-related decisions[] [w]ith few, if any, work-place changes."  [Filing No. 13-2 at 21.] During the hearing, the ALJ posed a hypothetical question to the VE using language nearly identical to the eventual mental RFC finding.  The ALJ adopted the following hypothetical, in relevant part for the VE's consideration—"[d]ue to a combination of severe mental deficits, work limited to simple, routine tasks, in a work environment free of fast-paced, production requirements, involving only simple, work-related decisions, of few if any workplace changes."  [Filing No. 13-

2 at 56-57.]  The VE concluded that jobs existed in the national economy with these CPP restrictions in combination of Doris M.'s other restrictions.  [Filing No. 13-2 at 58.]  The ALJ then added the additional limitation that the individual "would be off task 20% of the workday, over and above the normally-scheduled breaks."  [Filing No. 13-2 at 59.]  The VE testified that no jobs would be available in the national economy with this additional limitation.  [Filing No. 13-2 at 59.]

State agency consultants Dr. William Shipley, PhD and Dr. Ken Lovko, PhD found that Doris M. had moderate limitations with respect to CPP and adapting or managing oneself and mild limitations with respect to understanding, remembering, or applying information and interacting with others.  [*See* Filing No. 13-3 at 8; Filing No. 13-3 at 55.]  Both Dr. Shipley and Dr. Lovko opined that Doris M.'s ability to maintain attention and concentration for extended periods was not significantly limited and that her ability to complete a normal workday and workweek without interruption and perform at a consistent pace without an unreasonable number and length of rest periods was also not significantly limited.  [*See* Filing No. 13-3 at 12; Filing No. 13-3 at 60.]  Both opined that Doris M. was moderately limited in her ability to maintain a schedule, maintain regular attendance, and to be punctual.  [*See* Filing No. 13-3 at 12; Filing No. 13-3 at 60.]  Additional explanation by Dr. Shipley and Dr. Lovko stated that Doris M. had the attention span of 1 hour and that she can "attend to tasks for a sufficient period to complete tasks."  [*See* Filing No. 13-3 at 12; Filing No. 13-3 at 60.]  However, the ALJ found the state consultants' opinions "unpersuasive," and noted medical documentation of Doris M.'s "mood swings, tearful affect, anxious mood, and somewhat bizarre behavior," all of which the ALJ said warranted additional mental RFC limitations.  [Filing No. 13-2 at 23.]

The ALJ's generalized mental limitations of simple, routine tasks free of fast-paced production requirements fails to build a logical bridge between the ALJ's finding of a marked

limitation in CPP and the conclusion contained in the RFC.  The Seventh Circuit has recognized that while there are no RFC "magic words" that an ALJ must use, the ALJ must rationally articulate the grounds for his decision so that courts may afford the claimant a meaningful review of the ALJ's findings.  *See Steele v. Barnhart*, 290 F.3d 936, 941 (7th Cir. 2002).  Here, the ALJ found that Doris M. had a marked CPP limitation but failed to articulate, beyond the boilerplate routine language frowned upon by the Seventh Circuit, how this limitation impacted her functional capacity.  Notably, the RFC and accompanying explanation do not address Doris M.'s ability to stay on task for a sustained period.  The undersigned is unable to construct a logical bridge between the marked limitation finding and the RFC without a more robust explanation from the ALJ with supporting evidence.  *See Ian K. v. Kijakazi*, No. 1:20-1918-SEB-MPB, 2021 WL 4177202, at *4-5 (S.D. Ind. Aug. 13, 2021), *report and recommendation adopted*, 2021 WL 4171429 (S.D. Ind. Sept. 14, 2021) (finding RFC inadequately addressed moderate limitations in CPP where the RFC limited claimant to simple, routine tasks free of fast-paced production).

The Commissioner's argument that Doris M.'s RFC argument fails because she has not identified a medical opinion opining that she has greater CPP limitations than those adopted by the ALJ has some appeal.  Doris M.'s own function report denies that she has issues with concentration or completing tasks.  [Filing No. 13-6 at 19.]  Furthermore, Doris M.'s argument about what a proper mental RFC would be is underdeveloped in her briefing.  The Seventh Circuit has upheld an RFC's limitation to simple, repetitive tasks for individuals with limited concentration when the medical record shows that none of the claimant's "treating or consulting physicians described any … concentration problems." *Palmer v. Saul*, 779 F. App'x 394, 399-400 (7th Cir. 2019).  *See also Pate v. Kijakazi*, 2021 WL 3627118, at *3 (7th Cir. Aug. 17, 2021) ("In *Crump* we vacated the denial of benefits because the ALJ's RFC assessment ignored evidence of the

claimant's limitation in working at a sustained pace.  Here, however, [claimant] did not identify evidence that suggested an inability to perform simple tasks on a sustained basis.").  This case-by-case analysis tied to the medical evidence (or lack thereof) is akin to a harmless error analysis.  *Cf. Jozefyk v. Berryhill*, 923 F.3d 492, 498 (7th Cir. 2019) ("Because Jozefyk did not testify about restrictions in his capabilities related to concentration, persistence, or pace deficits, and the medical record does not support any, there are no evidence-based restrictions that the ALJ could include in a revised RFC finding on remand.")

The difficulty in applying this harmless-error-type rule here is the lack of explanation provided by the ALJ.  The ALJ seemed to recognize Doris M.'s CPP challenges with respect to staying on task when, in formulating an additional hypothetical for the VE, he incorporated the additional limitation of a person being off-task 20% of the time.  The VE opined that a person so limited would lack the functional capacity to sustain any employment.  [Filing No. 13-2 at 59.] But, the ALJ failed to incorporate this opinion anywhere in the RFC and explain why the ALJ found this limitation inapplicable to Doris M., "leaving the RFC altogether uniformed by considerations of off-task time or unplanned leave." *Crump*, 932 F.3d at 570.  The reviewing court is thus left to guess why the ALJ deemed Doris M. to have a marked limitation in CPP and what limitations (if any) with respect to time-on-task that limitation caused.  *See Kukec v. Berryhill, 2017 WL 5191872, at *4 (N.D. Ill. Nov. 9, 2017)* (remanding where ALJ posed 20%-off-task hypothetical to VE and then "failed to come to any conclusion regarding the off-task time [the ALJ] asked the VE to consider").

The Commissioner's citation to *Jozefyk v. Berryhill*, 923 F.3d 492 (7th Cir. 2019) does not save the ALJ's shortfalls here.  In *Jozefyk*, the Seventh Circuit determined that any error in formulating the RFC was harmless because the claimant had not testified about any restrictions in

11

his capabilities related to CPP, and the medical evidence did not otherwise support any such limitations. But, here, the ALJ appeared to recognize that Doris M.'s impairments posed some CPP limitations in terms of time off-task with the secondary hypothetical posed to the VE, but then failed to discuss his off-task finding in his decision. "While an ALJ is not bound to any hypothetical, it is clear here the ALJ considered the issue of off-task time, but then failed to provide any analysis of whether … [claimant] was limited by any off-task allowances and, if so, for how long." *Jacob D. v. Kijakazi*, 2021 WL 3674610, at *5 (N.D. Ill. Aug. 19, 2021). The undersigned cannot consider this error harmless when the VE testified that Doris M. would be unemployable were she to be off task 20% of the time. Furthermore, Doris M. testified about her lack of motivation and inability to follow through on plans. [*See* Filing No. 13-2 at 52-53.] These aspects distinguish this case from *Jozefyk*.

For these reasons, the undersigned **RECOMMENDS** that the Court **REVERSE and REMAND** this case so that the ALJ can address the gaps in his logic with respect to his RFC finding.

**B.     The RFC and Headaches**

Doris M. next contends that the ALJ erred because the RFC failed to account for her headaches, which the ALJ found to be a severe impairment at Step Two. [Filing No. 20 at 27.] She says that despite having found her headaches to be a severe impairment, the ALJ's decision failed to discuss what functional limitations Doris M. experienced as a result of the headaches or how those limitations were reflected in the RFC. [Filing No. 20 at 27.] In fact, other than a couple passing references to complaints of headaches, the ALJ decision does not discuss the condition or diagnosis.

In response, the Commissioner argues that the ALJ did not commit reversible error because Doris M. has not identified any limitations that she experiences because of her headaches beyond those contained in her RFC.  [Filing No. 22 at 15.]  The Commissioner further argues that Doris M. offers only speculation about how her headaches would limit her ability to work.  [Filing No. 22 at 15-16.]

"An ALJ errs where she finds that a claimant suffers a medically determinable severe impairment but fails to find that the impairment produces any work-related functional restrictions." *Gregory B. v. Saul*, 2020 WL 995828, at *8 (N.D. Ind. Mar. 2, 2020).  The ALJ's decision stated in a heading that Doris M.'s headaches constituted a severe impairment but never explained how her headaches impaired her.  The RFC discussion only mentions Doris M.'s complaints of headaches, without any reference to how the ALJ assessed that evidence or what limitations he found that Doris M. had as a result.  The reviewing court is left to guess why the ALJ deemed headaches to be a severe impairment, what limitations the ALJ believed that impairment caused, and how the RFC accounts for them.  *See Gregory B.*, 2020 WL 995828, at *8; *Allen v. Colvin*, 2014 WL 2930341, at *4 (S.D. Ind. June 26, 2014) ("[T]he ALJ erred by not addressing [claimant]'s severe impairments of headaches and IBS when determining the RFC.").

In sum, given the lack of explanation as to how the ALJ assessed Doris M.'s headaches and accounted for any resulting limitations in the RFC, the undersigned cannot find that the decision creates a logical bridge between the evidence and the ALJ's findings.  Therefore, the undersigned **RECOMMENDS** the Court **REVERSE and REMAND** for further proceedings so that the ALJ can address Doris M.'s headaches in his RFC analysis.

**C.      The ALJ's Analysis of Doris M.'s Subjective Symptoms**

Doris M. next argues that the ALJ erred in evaluating her subjective symptoms when the ALJ concluded that Doris M.'s statements concerning the intensity, persistence, and limiting effects of her symptoms were not entirely consistent with the medical evidence and other evidence in the record. [Filing No. 20 at 23.] She says that in finding that certain of Doris M.'s reports of physical pain improved with physical therapy and other treatments, the ALJ ignored the full picture, including side effects of drowsiness and fatigue that Doris M. experienced when taking medication. [Filing No. 20 at 25.] She contends that the ALJ fell short of his obligations under SSR 16-3p because he simply recited Doris M.'s medical records. [Filing No. 20 at 25-26.]

The Commissioner responds that the record amply supports the ALJ's finding that Doris M.'s conditions improved with treatment. [Filing No. 22 at 16.] The Commissioner further says that the ALJ's assessment of Doris M.'s subjective symptoms was sufficiently reasoned and supported. [Filing No. 22 at 17.]

In analyzing a claimant's subjective symptoms, the ALJ is instructed to consider a variety of factors, including objective medical evidence; daily activities; "the location, duration, frequency, and intensity of pain or other symptoms"; and use of medication. SSR 16-3p, 2016 WL 1119029, at *7; *see also Shauger v. Astrue*, 675 F.3d 690, 696 (7th Cir. 2012). An "ALJ may not discredit a claimant's testimony about her pain and limitations solely because there is no objective medical evidence supporting it." *Vanprooyen v. Berryhill*, 864 F.3d 567, 572 (7th Cir. 2017) (quoting *Villano*, 556 F.3d at 562).

The ALJ concluded that Doris M.'s medical impairments could reasonably be expected to cause her alleged symptoms. [Filing No. 13-2 at 22.] However, the ALJ concluded that her symptoms and limitations were not as severe as she claimed. To support his subjective-symptom

14

finding, the ALJ cited evidence that physical therapy and injections improved Doris M.'s back, knee, and shoulder pain and negative medical findings following x-rays of her knees and thoracic and lumbar spine. [Filing No. 13-2 at 22-23.] The ALJ also cited physical examinations showing that Doris M. had full range of motion, 5/5 strength in all extremities, and that was fully oriented and aware with clear speech. [Filing No. 13-2 at 22-23.] He also cited a consultative examination conducted after Doris M.'s disability hearing in which Doris M. was found to have a "limited range of motion in upper extremity left with guarding during forward flexion and lateral abduction[,] [h]owever, the rem[a]inder of the claimant's physical examination was normal." [Filing No. 13-2 at 23.]

The chief problem here is that while the ALJ amply discussed medical findings in the record, the ALJ did not then connect the findings to Doris M.'s subjective symptom statements. *See, e.g.*, *Push v. Saul*, 2021 WL 3116285, at *4 (N.D. Ind. June 11, 2021) (remanding where the ALJ did not provide analysis of "which of [claimant's] subjective symptoms were inconsistent with which portions of the medical evidence"). "It is not enough to simply say that the evidence conflicts with the claimant's testimony; the ALJ must show *how* it conflicts." *Ralston v. Saul*, 2019 WL 5558798, at *3 (N.D. Ind. Oct. 29, 2019). The Court is unable to discern which of Doris M.'s symptoms the ALJ found were undermined by the cited medical evidence. Without a proper analysis connecting Doris M.'s subjective symptoms to specific portions of evidence in the record, there is no "logical bridge" between the evidence and the ALJ's conclusion. *See Peeters*, 975 F.3d at 641.

Therefore, the undersigned **RECOMMENDS** the Court **REVERSE and REMAND** for further proceedings so that ALJ can address how the cited medical evidence was inconsistent with

Doris M.'s subjective symptoms and so that the ALJ can fully address all considerations set forth in SSR 16-3p.

## IV.
### CONCLUSION

For the reasons detailed above, the undersigned recommends the Court **REVERSE** the ALJ's decision denying Doris M. benefits and **REMAND** this matter for further proceedings pursuant to 42 U.S.C. § 405(g) (sentence 4) as detailed above.

Any objections to the Magistrate Judge's Report and Recommendation shall be filed with the Clerk in accordance with 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b). Failure to file timely objections within fourteen (14) days after service shall constitute waiver of subsequent review absent a showing of good cause for such failure.

Date: 1/19/2022

Mario Garcia
United States Magistrate Judge
Southern District of Indiana

**Distribution via ECF to all counsel of record.**